128

Doris A. ROGERS, Respondent, v. Clayton SCYPHERS, Individually, Clayton Scyphers, as agent for Industrial Life Insurance Company, and Industrial Life Insurance Co., Appellants.

(161 S. E. (2d) 81)

*Messrs. West, Holland & Furman,* of Camden and *Charles B. Elliott,* of Columbia, *for Appellant,*

*Messrs. Donald H. Holland,* and *J. Clator Arrants,* of Camden, *for Respondent,*

*Messrs. West, Holland & Furman,* of Camden, and *C. B. Elliott,* of Columbia, *for Appellants, in Reply,*

April 9, 1968.

BUSSEY, Justice.

This is an action arising out of the alleged negligence of defendants-appellants, the appeal being from an order over-ruling a demurrer to the complaint. The facts disclosed by the complaint are as follows. The individual defendant is the president and principal stockholder of the corporate defendant. In 1964 the corporate defendant, in addition to writing insurance, was engaged in the construction of homes for sale in Mayfield Acres Subdivision in Kershaw County, said homes being built by the corporate defendant under the supervision of the individual defendant.

One of these homes, at least inferentially just completed, was conveyed by the corporate defendant to the individual defendant Scyphers on August 29, 1964. Scyphers thereafter conveyed such to plaintiff's husband on January 7, 1965, first assuring him that the house was sound in every respect. On April 5, 1966, while the house was still relatively new, plaintiff climbed a folding stairway in the house which had been installed therein by the corporate defendant, under the supervision of its president and agent Scyphers, and, as she was near the attic landing, the stairway fell causing the plaintiff, who was pregnant at the time, to sustain quite serious injuries.

It is alleged that plaintiff's injuries were caused by the gross negligence, carelessness, recklessness, wantonness and wilfulness of the defendants in several particulars, which may be summarized as follows: (1) In building and putting on the market for sale a residence which, (a) did not meet the requirements of the South Carolina Builders' Code or regulations of either the VA or FHA; (b) in which the folding stairway was installed by merely attaching or hanging it in the molding surrounding it instead of bolting or properly nailing the same as required for the safety of those who

would use it, and (c) when the defendants knew or should have known that the said stairway was unfit for anyone to use; (2) in assuring the plaintiff that the house and residence was properly constructed and in safe condition, when the defendants knew, or could and should have known, with the least bit of inspection, that the folding stairway in the house was not properly constructed or attached.

Demurrer was on the ground that the complaint did not state facts sufficient to constitute a cause of action, and the exceptions of the appellants are five in number, but they state a single question as follows:

"Is the Seller (Vendor) of real property liable in tort to a purchaser (vendee) (or member of his family) for personal injuries resulting from a dangerous or defective condition of the premises after title has passed?"

We think, however, the questions presented cannot be so simply stated and we state them as follows:

1. Is a party who is engaged in the business of building and selling new dwelling houses liable to the purchaser or invitees of the purchaser for personal injuries sustained as a result of defective construction caused by the builder's negligence?

2. Is such builder-seller, of a new house, liable for such injuries if he negligently or willfully fails to disclose dangerously defective construction, which he either knew of or, in the exercise of due care, should have known of?

Both of the stated questions appear to be of novel impression in this jurisdiction, but, as will be hereinafter shown, they are far from novel in other jurisdictions.

The defendants contend that in the absence of fraud a vendor cannot be held liable to a vendee, or the invitees of the vendee, for any defect in the premises after a deed of conveyance, under which the vendee has gone into possession. Strongly relied on by the defendants is the legal proposition that as a general rule there is no implied warranty in the sale of lands. See *Latimer v. Wharton,* 41 S. C. 508,

19 S. E. 855, and the cases therein reviewed. While that rule has been applied by this court to a variety of situations, it has no application to the instant case for the simple reason that the plaintiff does not seek to recover on the basis of any implied warranty.

Research of the questions involved in this appeal leads us into a field of law in which many developments have taken place in other jurisdictions in comparatively recent years. Defendants place great reliance on an annotation in 8 A. L. R. (2d), commencing at page 218, wherein, at Sec. 4, page 221, it is stated that the prevailing rule is that a vendor or grantor of real estate is not liable for injuries to a purchaser or member of his family, resulting from an existing defective condition of the premises conveyed. Admittedly, such rule has been applied by at least several courts, even where the house was a new one sold by a builder-vendor. Such rule, however, has in more recent years been increasingly rejected, in cases factually similar to the instant case. Some of the cases cited in the mentioned annotation, and relied on by defendants, as will hereinafter be pointed out, have been rejected, in whole or in part, in the jurisdictions in which they arose.

In a somewhat related field, the entire weight of modern authority is to the effect that building contractors, under the rationale of the celebrated case of *MacPherson v. Buick Motor Co.*, 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, are liable for injuries to, or the death of, third persons occurring after the completion of the work and acceptance by the owner, where the work is reasonably certain to endanger third persons if negligently prepared or constructed. See the annotation in 58 A. L. R. (2d) 869. Prosser on Torts, 3d Ed., 688, Sec. 99, deals at some length with this phase of the law. The same work, at page 408, Sec. 62, deals with developments in the law with respect to the liability of a vendor, as opposed to a contractor.

While most courts still adhere to the proposition that in the usual, normal sale of lands, and old buildings, the an-

cient doctrine of caveat emptor applies, with respect to a vendor, who is also the builder of a new structure, the decided trend of modern decisions is to make a distinction. Where the vendor is also the builder he is today, by the weight of modern authority, held liable for damages and injuries occurring after the surrender of title and possession, on one or more of three theories: (1) Implied warranty, an issue not raised in this case; (2) an imminently dangerous condition caused by negligence in construction, and (3) the following proposition from Sec. 353 of the Restatement of the Law of Torts, 3d Ed.

"(1) A vendor of land who conceals or fails to disclose to his vendee any condition whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

"(a) the vendee does not know or have reason to know the condition of the risk involved, and

"(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will discover the condition or realize the risk."

*Belote v. Memphis Development Co.* (1961), 208 Tenn. 434, 346 S. W. (2d) 441; *Sabella v. Wisler* (1963), 59 Cal. (2d) 21, 27 Cal. Rptr. 689, 377 P. (2d) 889; *Dow v. Holly Manufacturing Co.* (1958), 49 Cal. (2d) 720, 321 P. (2d) 736; *Schipper v. Levitt & Sons, Inc.* (1965), 44 N. J. 70, 207 A. (2d) 314; *Fisher v. Simon* (1961), 15 Wis. (2d) 207, 112 N. W. (2d) 705; *Leigh v. Wadsworth* (Okl. 1961), 361 P. (2d) 849; *Lowe v. Francis Construction Co.* (Okl. 1962), 373 P. (2d) 51; *Glisan v. Smolenske* (1963), 153 Colo. 274, 387 P. (2d) 260; *Carpenter v. Donohoe* (1964), 154 Colo. 78, 388 P. (2d) 399; *Vanderschrier v. Aaron* (1957), 103 Ohio App. 340, 140 N. E. (2d) 819; *Waggoner v. Midwestern Development, Inc.*

(S. D. 1967), 154 N. W. (2d) 803; *Caporaletti v. A-F Corp.* (D. C. 1956), 137 F. Supp. 14; *Id.,* 99 U. S. App. D. C. 367, 240 F. (2d) 53.

While no implied warranty is asserted or relied on in the instant case, we have included in the foregoing citations several cases wherein liability was predicated solely on the theory of implied warranty, simply to show the trend of the law in this field. The cases included which hold the builder-vendor liable for negligence in construction and/or on the basis of the Restatement rule reach, we think, legally sound and just results.

We have previously, in *Salladin v. Tellis,* 247 S. C. 267, 146 S. E. (2d) 875, approved the doctrine of the *MacPherson case* with respect to a chattel, and we can see no rational difference between the duty owed by the manufacturer of a chattel and the duty owed by the builder-vendor of a new structure. We think there was a duty on the defendants as builders to use reasonable care in the construction of the home to avoid unreasonable risk and danger to those who would normally be expected to occupy it, and a duty to disclose to the purchaser any dangerous condition of which they knew or should have known, in the exercise of reasonable care. Such were duties owed by them, not only to the purchaser, but to members of his family whom they, of course, should have known would likely be injured by the dangerous condition.

In 38 Am. Jur. at page 655, Negligence, Sec. 14, it is said that the duty of exercising care to protect another against injury, "exists at common law as a matter of relation and of knowledge of danger, which in turn, depends upon the probability of injury. The common law rule which requires a person to use care necessarily involves two persons, or one person and some right or property of another. It has to do with one's acts in reference to the person, property, or rights of another. If there be no relation there is nothing upon which the rule can operate. The rule of reasonable care under the circumstances could not limit the conduct of Robin-

son Crusoe as he was first situated; but as soon as he saw the tracks in the sand, the rule began to have vitality. He then had notice that there might be other persons on the island; and this knowledge of their presence made it his duty as a reasonable man to use reasonable care to the end that no act of his should injure them."

We quote the following from *Caporaletti v. A-F Corporation, D. C.,* 137 F. Supp. 14; *Id.,* 99 U. S. App. D. C. 367, 240 F. (2d) 53.

"At common law the grantor of real property was not liable for damages caused by any defect in the construction of the building after he had parted with title to the property. The rule of *caveat emptor* was applicable, *Palmore v. Morris,* 182 Pa. 82, 89, 37 A. 995; *Smith v. Tucker,* 151 Tenn. 347, 360, 270 S. W. 66, 41 A. L. R. 830; *Bottomley v. Bannister,* L. R. (1932), 1 K.B. 458, 468. The question presented here is a narrower one, however. Specifically, it is whether this general rule should exempt from liability a builder who is guilty of negligence in the construction of a house sold by him, if the negligence results in personal injuries to the purchaser or any other invitee.

"Conditions have radically changed since the origin of the general common law rule. Homes are being constructed on a large scale by persons engaged in the building business for the purpose of selling them to individual owners. The ordinary purchaser is not in a position to discover a latent defect by inspection, no matter how thorough his scrutiny may be, because usually he lacks sufficient familiarity with the complexities of building construction and the intricacies of applicable regulations. He should be able to rely on the skill of the builder who sells the house to him. Otherwise he would be at the vendor's mercy. The realities of modern life necessarily lead to the conclusion that the builder should be liable for injuries caused by his negligence under such circumstances, either to the purchaser or to an invitee. Any other result would be unjust and intolerable. It would encourage unscrupulous builders who may be tempted to re-

duce their costs and increase their profits by palming off defective and inferior construction on their customers.

"It is the glory of the common law that it is not a rigid, immutable code. On the contrary, it is a vital, living force that endows with the breath of life a body of practical principles governing human rights and duties. These rules are subject to gradual modification and continuous adjustment to changing social and economic conditions and shifting needs of society. This characteristic is the life blood of the common law. It still exists in its pristine vigor. The spark of life is still burning bright. It has not been extinguished."

Defendants point out that the decision just quoted from was reversed on appeal, 240 F. (2d) 53, and attempt to distinguish it because the seller in that case entered into a contract with the purchaser to build the particular house prior to its construction and conveyance. The decision of the lower court was reversed solely on the inadvertent failure of the District Judge to define negligence in his charge. The opinion of the Court of Appeals otherwise approved the decision of the lower court and reflects that both courts attached no significance to the contract between the parties and regarded the status of the defendant as being simply a builder-vendor.

We have reviewed all of the cases relied upon by defendants, and now deal briefly with some of them. *Smith v. Tucker,* 151 Tenn. 347, 270 S. W. 66, was subsequently modified by the Supreme Court of Tennessee in the case of *Belote v. Memphis Development Co.* (1961), 208 Tenn. 434, 346 S. W. (2d) 441. The latter decision is in accord with our view as to liability arising from the nondisclosure by the builder-vendor of a dangerous condition in a new house. The rationale of *Levy v. C. Young Construction Co.,* 46 N. J. Super. 293, 134 A. (2d) 717, has been twice expressly rejected by the Supreme Court of New Jersey; first on appeal in that case, 26 N. J. 330, 139 A. (2d) 738, where the result was affirmed for failure of proof, and *Schipper v. Levitt & Sons, Inc.,* 44 N. J. 70, 207 A. (2d) 314.

The English case of *Otto v. Bolton & Norris* (1936), 2 K. B. 46, 52, held that there was no implied warranty (with which we are not here concerned) in the sale of a completed house. However, the more recent case of *Perry v. Sharon Development Company, Ltd.* (1937), 4 All., E. L. R. 390, relied on a dictum in the case of *Miller v. Cannon Hill Estates, Ltd.* (1930), 2 K. B. 113, and held, that a warranty would be implied where a new house, under construction, was substantially though not quite completed at the time of the sale.

We conclude that the demurrer was properly overruled, but in so concluding, we have assumed that the defect in the stairway was a latent, concealed one, unknown to plaintiff or her husband prior to plaintiff's injury, although the complaint does not specifically so allege. Plaintiff is, of course, entitled to a liberal construction of the complaint and we think it reasonably inferable from the facts alleged that the defect was a latent, concealed one. No issue as to insufficiency of the complaint, in this respect, is raised by either the demurrer or the exceptions. Whether the alleged delicts on the part of the defendant were in fact the proximate cause of plaintiff's injuries and whether there was, perchance, intervening negligence on the part of plaintiff's husband, or contributory negligence on the part of the plaintiff herself are issues which are, of course, not now before us.

Affirmed.

Moss, C. J., and LEWIS and BRAILSFORD, JJ., concur.

LIONEL K. LEGGE, Acting J., concurs in result.